Commonwealth ex rel. Groff *v.* Groff, Appellant.

Argued March 26, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*James Neumann Lafferty,* for appellant.

*J. Leon Rabben,* for appellee.

OPINION BY ROSS, J., July 14, 1953:

This is the second time we consider the matter of support of Winifred Groff by her father, John Russell Groff, appellant herein. The matter was originally brought to our attention when the Domestic Relations Division of the Municipal Court of Philadelphia refused, on June 21, 1950, appellant's petition to vacate an order of support made on him in 1948. We affirmed at 169 Pa. Superior Ct. 12, 82 A. 2d 536. On December 29, 1952 the lower court again refused appellant's petition to vacate but granted him a reduction of the order from $30 to $20 a week. From this refusal to vacate the father has again appealed to this Court.

Appellant and Winifred Groff, mother of the daughter Winifred, are divorced. The daughter lives with her mother in a home in Philadelphia maintained by the maternal grandfather, William R. Nicholson, at a cost to him of about $2,500 a year. When our previous decision was filed, the girl was 20 years old. At the date of this writing she is 22.

Evidence upon which we based affirmance of the earlier order indicated that the daughter was unemployable, not because of ill health or physical incapacity, but because, according to the expert who examined her and the record of her employment at various business establishments, she was psychologically unfitted to adjust herself, had no desire to work, and was incapable of facing reality, with the result that she drifted from one job to another, only to be dismissed eventually for incompetence.

In the present petition appellant avers that since his daughter has attained her majority and during the

preceding year was employed in five or six jobs for which she received compensation in the amount of $600, and at the time of the hearing was learning to operate an I.B.M. machine at a salary of $38 a week, she is capable of self-support. Although it does not appear of record, it is admitted that between the hearing and the argument on appeal she lost the last position also.

The fact that the daughter has reached the age of 21 is not of itself sufficient to justify revocation of an order for her support. *Com. ex rel. O'Malley v. O'Malley,* 105 Pa. Superior Ct. 232, 161 A. 883. The test is whether she is physically and mentally able to engage in profitable employment and whether employment is available to her at a supporting wage. *Com. v. Gilmore,* 97 Pa. Superior Ct. 303, 304.

The girl testified that she left one position "just about the time I was going to be fired", that she thought she was being retained in the job she then had because of the difficulty experienced by the company to obtain employes to do the particular type of work, that during the preceding year her jobs had lasted "just weeks at a time", that out of the money she had saved she purchased a car for $375 and then a motorcycle for $200, both of which had been wrecked; that she was paying for maintenance of a Great Dane dog, a parrot and fish. James J. O'Kane, assistant personnel manager of an engineering corporation, testified that Winifred had been employed with his firm from July to September 1952 and was dismissed because "she wandered away from the job incessantly and she had been warned several times. Her conduct was poor and the quality was poor." Comparing this testimony with that of the previous record, we find no such change of circumstances as must be shown to justify vacation of the original order *(Com. ex rel. Barnes v. Barnes,* 151 Pa. Superior Ct. 202, 203, 30 A. 2d 437, and that she has not yet

shown herself capable of self-support. Having reached this conclusion, we deem it unnecessary to cite authority for the proposition that the legal duty of support in such circumstances rests with the father, and the fact that the maternal grandfather is financially able to furnish it, and has in fact done so to a considerable degree, does not militate against continuance of the order on the father.

As we stated in our earlier opinion, this situation has been one of first impression with us. The learned trial judge, who has dealt patiently and wisely with these parties over a period of years, during which time he consulted with a woman psychologist trained in guidance of problem adolescents, stated at that time that the girl was not lazy and that she had not wilfully intended to avoid responsibility for her own maintenance by depending on her father's enforced aid, but that he was convinced that "she conducts herself as she does because of her inability to grasp the realities of life and for that reason she is unable to support herself". In his present opinion he reiterates that the girl is not to be classified as lazy. "A broad discretion is lodged in the court below on the matter of bona fides and we will not reverse in the absence of manifest abuse of this discretion. 'A judge who sees and hears the witnesses . . . is in better position than we to decide the issue on its merits . . . and our function on appeal, therefore, is merely to determine whether the lower court is chargeable with an abuse of discretion': Commonwealth ex rel. Pinkenson v. Pinkenson, 162 Pa. Superior Ct. 227, 57 A. 2d 720." *Com. ex rel. Lubanski v. Lubanski,* 165 Pa. Superior Ct. 603, 604, 605, 69 A. 2d 440; *Com. ex rel. Spitalny v. Spitalny,* 167 Pa. Superior Ct. 520, 523, 76 A. 2d 489; *Com. ex rel. Koehler v. Koehler,* 170 Pa. Superior Ct. 117, 119, 84 A. 2d 253.

Undoubtedly this young woman is sorely in need of guidance by and understanding from her family. Her grandfather, by his testimony, impresses us as evincing a genuine interest in her welfare. Her home life with her mother is unhappy, and she testified that for sometime prior to the hearing she had not been speaking to her mother.

The mother, in turn, testified without contradiction that she had no knowledge as to where her daughter procured her meals but that it was away from home, and that for a period of approximately five months her daughter would leave the house and stay out until four o'clock in the morning, returning home to sleep until 9:30 a.m.

We have been considering the problem of this girl's inability to retain employment from a purely psychological viewpoint, but the mother's testimony injects into the case speculation as to whether it does not also involve a physical aspect. Even in extreme youth it is physically impossible over an extended period of time to stay out the greater part of the night, snatch a few hours of sleep and then render acceptable service the next day at one's employment.

The record sustains the learned trial judge's analysis and conclusions, and we find no abuse of discretion. The sincerity of his efforts to find a just solution is commendable.

We order that future payments be made by appellant directly to his daughter rather than to his divorced wife, and as so modified the order is affirmed.